861 A.2d 165 (2004)
373 N.J. Super. 253
STATE of New Jersey, Plaintiff-Respondent,
v.
Sonia HARRIS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 2004.
Decided November 29, 2004.
*166 Alan Dexter Bowman, Newark, argued the cause for appellant (Mr. Bowman, of counsel and on the brief).
Joie Piderit, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Ms. Piderit, of counsel and on the brief).
*167 Before Judges KING, NEWMAN and HOLSTON, JR.
The opinion of the court was delivered by
HOLSTON, JR.
In this matter of first impression, we hold that N.J.S.A. 2C:21-25b(1) encompasses in its definition of money laundering any possession of property known to be derived from criminal activity with the intention to promote further criminal activity. No independent predicate offense is necessary to the promotion prong of New Jersey's money laundering statute.
On April 6, 2001, a State Grand Jury returned indictment No. SGJ 438-01-6 charging defendant, Sonia Harris, with first-degree conspiracy to commit financial facilitation (money laundering), N.J.S.A. 2C:5-2 and N.J.S.A. 2C:21-25c (count one); first-degree money laundering, N.J.S.A. 2C:21-25b(1) and N.J.S.A. 2C:20-6 (count two); second-degree conspiracy to commit theft by deception, N.J.S.A. 2C:20-4 and N.J.S.A. 2C:5-2 (count three); second-degree theft by deception, N.J.S.A. 2C:20-4 and N.J.S.A. 2C:2-6 (count four); and second-degree misapplication of entrusted property, N.J.S.A. 2C:21-15 and N.J.S.A. 2C:2-6 (count five). After a nine-day trial, on July 5, 2002 the jury found defendant guilty on all counts. On January 31, 2003, defendant was sentenced to an eighteen-year aggregate term of imprisonment with a four-year parole disqualifier. We affirm.
Defendant, an attorney at the time, represented George Shamond Scott (Scott), a real estate developer.[1] Scott was owner and CEO of Ace Management Company (Ace), which he used to buy and sell properties through a practice called "flipping." Scott contracted to buy property and then sold the property before legally acquiring it. Scott also purchased property and acquired multiple mortgages without paying off the existing mortgage.
The "flip" enabled Scott to sell a house prior to actually owning a house so he could use the funds in a subsequent purchase. He paid Lisa Dumey of Rice Title Agency to falsify title documents to reflect that there were no existing mortgages. Scott paid mortgage brokers to help him secure the mortgages. Scott maintained separate identities, George Scott and Shamond Scott, to facilitate the fraudulent real estate transactions. Scott made nearly $1,000,000 in illicit proceeds from the transactions.
Defendant was the closing attorney in some of these transactions. Defendant failed to file and record title documents and failed to disclose pre-existing mortgages. Defendant also maintained an attorney trust account for the funds derived from the illicit transactions and drew checks to the order of Scott, to cash, or to another recipient. Scott paid defendant a total of $14,000 in legal fees.
This conviction arises out of the purchase, sale, and refinancing of two properties located at 11 East Greenbrook Road and 10 Lakeside Avenue, North Caldwell. In 1999 Scott, through Ace and while represented by defendant as his lawyer, entered into a contract to buy a house located at 11 East Greenbrook Road from the Gilligans, represented by Robert Candido, Esq., for $390,000. After the December 12, 1998 deposit check was returned for insufficient funds, defendant sent a replacement deposit check dated February 9, 1999 to Candido written on defendant's attorney trust account for $18,500. The proposed closing date was April 1, 1999. Over the following months, *168 defendant did not respond to any of Candido's numerous attempts to arrange a closing date. On May 5, 1999, Candido wrote a letter to defendant terminating negotiations for the sale of the house.
Ace, not disclosing that it did not own the property, sold the house to Robert Arangeo for $430,000. Scott helped Arangeo obtain a $300,570 mortgage and told Arangeo that Ace would manage the property for a fee. Scott showed Arangeo and the mortgage company fabricated title work indicating that he purchased the property from the Gilligans. Defendant prepared the closing documents and represented both Ace and Arangeo at the closing. The proceeds of the sale were deposited into defendant's trust account. Arangeo believed that his purchase of the property was an investment and that Ace was managing the property and making the mortgage payments. Arangeo visited the house for the first time approximately one year later, only to discover that the house had been demolished and that he never actually owned the house. At the time of trial, Arangeo remained obligated to the mortgage company.
On April 14, 1999, after the property was purportedly transferred from Ace to Arangeo, Scott used a falsified title indicating that Ace was the owner of the property to obtain a $360,000 mortgage. Ace sold the property to George Scott for $480,000. Defendant was the closing attorney. On June 2, 1999, the Gilligans, the actual owners, sold the property to a third party for $422,000. Candido recorded the deed.
On June 4, 1999 Ace, without ever having owned the property, purportedly sold the house to "Shamond Scott" for $389,000. Defendant asked a professional acquaintance, Athena Alsobrook, Esq., to represent Ace at the closing because defendant was representing Scott, the buyer. Defendant told Alsobrook that Ace owned the property, and Alsobrook relied on the representation when reviewing the title certificate. Defendant prepared the closing statement stating that Ace owned the property. Defendant represented "Shamond Scott" at the June 4, 1999 closing, notarizing a document used to obtain a $311,200 mortgage that George Scott signed as "Shamond Scott." The mortgage company was lead to believe that the mortgage was the first mortgage on the property.
On August 27, 1998, defendant, on behalf of Ace, entered into a contract of sale with Henry and Roseann Capozzi, represented by Anthony Colasanti, Esq., to purchase a residential property located at 10 Lakeside Avenue, North Caldwell, for $535,000. On September 30, 1998, Ace, without having title to the property, sold the residence to George Scott for $725,000. Defendant prepared the closing statement and obtained the title documents indicating that Ace purchased the property from the Capozzis on January 8, 1998 even though no such sale ever occurred. Scott, using the fraudulent closing documents drafted by defendant, obtained a $471,250 mortgage. The mortgage permitted Scott to ultimately purchase the property from the Capozzis.
On October 30, 1998, the Capozzis sold the property to George Scott for $535,000. Defendant paid part of the purchase price by writing a $25,000 deposit check against her attorney trust account. Defendant was the closing attorney. On December 9, 1998, George Scott obtained a $100,000 second mortgage.
On June 23, 1999, George Scott purportedly conveyed the property to "Shamond Scott" for $725,000. Defendant was the closing attorney. Scott signed the contract for both himself and "Shamond Scott." Shamond Scott sent the mortgage company a title report, signed by defendant, *169 indicating that he was the owner of the property. Scott obtained a $580,000 refinance mortgage to pay off the two outstanding mortgages of $471,250 and $100,000. Defendant did not pay off the two mortgages but, instead, deposited the proceeds into her attorney trust account. Defendant wrote checks on her attorney trust account, at Scott's direction, for unrelated matters, including a check to Scott for $400,000. Scott paid defendant $5000 for the closing of the Lakeside Avenue property.
Defendant raises the following issues for our consideration.
ISSUE I
THE MONEY LAUNDERING STATUTE WAS IMPROPERLY APPLIED TO THE FACTS AT ISSUE IN THE INSTANT CASE. (not raised below)
ISSUE II
THE JURY INSTRUCTIONS ISSUED RESPECTING MONEY LAUNDERING WERE PALPABLY INSUFFICIENT.
N.J.S.A. 2C:21-25 provides: A person is guilty of a crime if the person:
a. transports or possesses property known or which a reasonable person would believe to be derived from criminal activity; or
b. engages in a transaction involving property known or which a reasonable person would believe to be derived from criminal activity
(1) with the intent to facilitate or promote the criminal activity; or
(2) knowing that the transaction is designed in whole or in part:
(a) to conceal or disguise the nature, location, source, ownership or control of the property derived from criminal activity; or
(b) to avoid a transaction reporting requirement under the laws of this State or any other state or of the United States; or
c. directs, organizes, finances, plans, manages, supervises, or controls the transportation of or transactions in property known or which a reasonable person would believe to be derived from criminal activity.
d. For the purposes of this act, property is known to be derived from criminal activity if the person knows that the property involved represents proceeds from some form, though not necessarily which form, of criminal activity.
Harris was indicted for money laundering as proscribed by N.J.S.A. 2C:21-25b(1), engaging in a transaction involving property derived from criminal activity with the intent to facilitate or promote the criminal activity. Defendant argues for the first time on appeal that the money laundering statute is inapplicable to her actions. Defendant participated in fraudulent real estate transactions by aiding Scott in selling properties without ownership and procuring multiple mortgages on properties without disclosing previous mortgages. Defendant asserts that criminal liability should have been limited to the second-degree offenses of theft by deception, N.J.S.A. 2C:20-4, and bank fraud.
No New Jersey precedent exists that interprets this State's money laundering statute. However, federal law has developed a reasonably comprehensive body of judicial expression. Defendant contends that the federal cases interpreting the federal counterpart, 18 U.S.C. § 1956, upon which New Jersey's statute is modeled, require evidence that illegitimate funds were washed for the purposes of making them appear legitimate as part of the conduct.
Defendant claims that illegitimate money cannot be considered laundered unless *170 it is generated in a distinct transaction separate from the laundering transaction. Defendant's actions involved connected transactions with no predicate offense from which proceeds were generated. Defendant contends that without such a wash, there is no proof of "any property derived from criminal activity."
Defendant argues there is no precedent that defines the term "property known to be derived from criminal activity." There is also no case law definition for the concept "to facilitate or promote the criminal activity." Defendant claims federal law separates the criminally derived property and the criminal activity facilitated or promoted. Defendant admits, however, that N.J.S.A. 2C:21-25 does not, on its face, require the elemental separation of the two activities.
Defendant relies on United States v. Barnes, 230 F.3d 311 (7th Cir.2000). In Barnes, the independent predicate offense was drug trafficking. Barnes was not involved in drug trafficking. Barnes, however, sought to launder the cash proceeds derived from the predicate offense of drug trafficking in a distinct real estate transaction, the purchase of an apartment house. In convicting Barnes of attempted money laundering, the court noted: "[T]he government had to prove beyond a reasonable doubt that [Barnes] attempted, with the intent to conceal or disguise the nature, location, source, ownership, or control of property [which] he believed to be the proceeds of specified unlawful activity such as dealing in narcotics or other dangerous drugs, to conduct a financial transaction...." Id. at 314.
Defendant also asserts that the purpose of Congress and presumably the New Jersey Legislature in enacting the money laundering statute was to penalize only those purchases designed in whole or in part to hide illegally-obtained money. Other conduct, defendant contends, is outside the statute. Defendant cites the following cases in support of her contention: United States v. Marshall, 248 F.3d 525, 539 (6th Cir.), cert. denied, 534 U.S. 925, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001); United States v. Sanders, 928 F.2d 940, 946 (10th Cir.), cert. denied, 502 U.S. 845, 112 S.Ct. 142, 116 L. Ed.2d 109 (1991); United States v. Savage, 67 F.3d 1435, 1441-42 (9th Cir.1995) ("Congress passed the money laundering statutes to criminalize the means criminals use to cleanse their ill-gotten gains.... `[P]roceeds' are funds obtained from prior, separate criminal activity.... `Congress appears to have intended the money laundering statute to be a separate crime distinct from the underlying offense that generated the money to be laundered.'") (internal citation omitted), cert. denied, 516 U.S. 1136, 116 S.Ct. 964, 133 L.Ed.2d 885 (1996).
Defendant also argues that federal precedent establishes that a predicate offense must produce proceeds before anyone can launder those proceeds. United States v. Edgmon, 952 F.2d 1206, 1213 (10th Cir.1991), cert. denied, 505 U.S. 1223, 112 S.Ct. 3037, 120 L. Ed.2d 906 (1992); United States v. Lee, 232 F.3d 556, 559 (7th Cir.2000) ("[c]riminally derived property" must first have existed prior to the alleged money laundering.), cert. denied, 534 U.S. 940, 122 S.Ct. 315, 151 L. Ed.2d 235 (2001).
Defendant contends the State's case against her must fail because the absence of a predicate offense precludes the State from being able to separate the money at issue (proceeds) from the property obtained. In other words, the transactions here were interconnected and any proceeds were not obtained from prior separate criminal activity. United States v. Bolden, 325 F.3d 471, 488 (4th Cir.2003) ("[S]pecified unlawful activity [must] generate [ ] proceeds prior to the money laundering, *171 and ... the money laundering [must] actually involve[ ] those criminally-derived proceeds.").
Defendant reads the money laundering statute, a first-degree crime when it involves over $500,000, too narrowly. In interpreting a statute, "[O]ur goal of implementing the Legislature's intent begins with the text of the statute. If the meaning of the text is clear and unambiguous on its face, we enforce that meaning." State v. Reiner, 180 N.J. 307, 311, 850 A.2d 1252 (2004) (citing State v. Brannon, 178 N.J. 500, 505-06, 842 A.2d 148 (2004); State v. Thomas, 166 N.J. 560, 567, 767 A.2d 459 (2001)). Only "[i]f the language admits to more than one reasonable interpretation [ ] [do we] look to sources outside the language to ascertain the Legislature's intent." Ibid.; Brannon, supra, 178 N.J. at 507, 842 A.2d 148; State v. Pena, 178 N.J. 297, 307, 839 A.2d 870 (2004) (quoting Thomas, supra, 166 N.J. at 567, 767 A.2d 459); See State v. Malik, 365 N.J.Super. 267, 274, 839 A.2d 67 (App.Div.2003) ("[I]f the language is plain and its meaning clear, the inquiry ends there, [and the court's] sole function [is] `to enforce [the statute] according to its terms.'"), certif. denied, 180 N.J. 354, 851 A.2d 648 (2004).
The text of N.J.S.A. 2C:21-25 makes clear by use of the designations (a) or (b) or (c) that it criminalizes three distinct types of conduct. Subsection (a) makes it a crime if the person possesses property known to be derived from a criminal activity. By use of the conjunction "or," subsection (b) criminalizes two separate and distinct criminal acts if the person "engages in a transaction involving property known ... to be derived from criminal activity." The first, which is the activity the jury found defendant engaged in, is the requirement that the actor intended to facilitate or promote that activity. The second, not implicated by defendant's actions, is the more traditional money laundering activity, where the actor knows that the transaction is designed in whole or in part to conceal or disguise the nature, the location, source or ownership or control of the property derived from criminal activity.
Subsection (d) provides: "For the purposes of this act, property is known to be derived from criminal activity if the person knows that the property involved represents proceeds from some form ... of criminal activity."
The public policy expressed in N.J.S.A. 2C:21-23 supports the application of the statute to defendant's conduct. That statute, in applicable part, states:
e. [E]ffective criminal and civil sanctions are needed to deter and punish those who are converting the illegal profits, those who are providing a method of hiding the true source of the funds, and those who facilitate such activities. It is in the public interest to make such conduct subject to strict criminal and civil penalties because of a need to deter individuals and business entities from assisting in the "legitimizing" of proceeds of illegal activity. To allow individuals or business entities to avoid responsibility for their criminal assistance in money laundering is clearly inimical to the public good.

[Ibid. (emphasis added).]
Additionally, the Assembly Judiciary, Law and Public Safety Committee statement lends further support to the application of the statute to defendant's actions. The statement reads: "This committee substitute would provide the law enforcement community with new tools to combat the knowing financial facilitation of criminal activity, also known as money laundering. This committee substitute is designed to confront this problem by prohibiting money laundering conduct in any form *172 ...." (emphasis added). The committee report then reiterates the tripartite definition of money laundering, including the alternative definitions contained in subsection (b).
"In 1994, the Legislature created offenses relating to the financial facilitation of criminal activity.... This includes but is not limited to those who drain money from the economy by illegal conduct and then undertake the operation of legitimate businesses with the proceeds of illegal conduct." 33 New Jersey Practice, Criminal Law § 16.30, at 472 (Gerald D. Miller) (3d ed.2001) (emphasis added).
The article continues:
This section sets forth three crimes. It is a crime if a person... possesses property known to be derived from criminal activity. [N.J.S.A. 2C:21-25(a)]. `Person' means any ... enterprise which is capable of holding a legal or beneficial interest in property. [N.J.S.A. 2C:21-24]. `Enterprise' includes any individual, sole proprietorship, ... or other legal entity... and it includes illicit as well as licit enterprises.... Although this definition is more encompassing than the federal definition, it comports with the federal cases which have interpreted `enterprise' broadly .... [N.J.S.A. 2C:21-24; N.J.S.A. 2C: 20-1]. `Derived from' means obtained directly or indirectly from, maintained by, or realized through. `Property' means anything of value; it includes any benefit or interest without reduction for expenses incurred for acquisition, maintenance or any other purpose. [N.J.S.A. 2C:21-24; `property' has the expansive meaning as set forth in N.J.S.A. 2C:20-1.]
It is a crime to engage in a transaction involving property known to be derived from criminal activity either with the intent to facilitate or promote the criminal activity, [N.J.S.A. 2C:21-25(b)(1)], or knowing that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the property derived from criminal activity .... [N.J.S.A. 2C:21-25(b)(2)(a)].
....
For each of these three offenses, the state must prove a culpability of knowledge. For these offenses a person knows that property is derived from criminal activity if the person knows that the property involved represents proceeds from some form though not necessarily which form of criminal activity. [N.J.S.A. 2C:21-25(d)].
....
The Legislature also declared that these sections ... should not be construed in any way to preclude or limit a prosecution or conviction for any other offense defined by the Code or any other criminal law of the State of New Jersey. [N.J.S.A. 2C:21-27(c)].
[Id. at 472-73 (emphasis added).]
Cannel, New Jersey Criminal Code Annotated, comment on N.J.S.A. 2C:21-23 (2004), states:
Sections 2C:21-23 through 2C:21-29 were enacted by L.1994, c. 121. From the bill's statement, it appears that the sections are intended to punish money laundering. Unfortunately the ambiguity of the enactment creates a reach well beyond that activity.... The crime is defined in section 2C:21-25. It punishes any possession of property known to be derived from criminal activity. Other parts of the section are mainly surplusage in that anyone who violates any of the provisions of the section, almost surely, would be guilty of possession directly or through complicity.
*173 Thus, the statute requires two "transactions," (1) the underlying criminal activity generating the property, and (2) the money-laundering transaction where that property is either (a) used to facilitate or promote criminal activity, or (b) concealed, or "washed." Defendant contends that the second transaction of the money-laundering statute requires the "washing" of illegitimate money, as money laundering is generally perceived. That argument fails to recognize the facilitation or promotion alternative, the applicable second transaction in this case.
Under the plain language of the statute, the indictment and conviction of defendant for money laundering was appropriate. Defendant engaged in transactions involving property known by her to be derived from criminal activity and engaged in transactions with the intent to facilitate or promote further criminal activity. She participated in the underlying criminal activity. She possessed the proceeds from George Scott's illicit real estate transaction in her trust account, and she assisted her accomplices in using those proceeds to fund further fraudulent transactions. Clearly, she knew that the funds were derived from criminal activity because she was a participant. Defendant committed theft by deception by preparing fraudulent documents that created the false impression on buyers and mortgage companies that Scott owned the properties and that no prior mortgages existed on the properties. As a result of these false representations, defendant received illicit funds from the deceived buyers and mortgage companies.
Any subsequent financial transaction involving these proceeds that promoted or facilitated the illegal real estate business constituted money laundering. Defendant used the illicit funds generated from the false representations to actually purchase the property from the owner, in the case of Lakeside Avenue, and then secured numerous mortgages by her involvement in the sale of the property between Ace, George Scott, and Shamond Scott. Defendant also wrote checks on her attorney trust account at Scott's direction when she represented to mortgage companies that prior mortgages would be paid off with the proceeds.
The selected federal money laundering cases cited by defendant are inapposite. Those cases specifically discussed and focused on 18 U.S.C. § 1956(a)(1)(B)(i), the concealment prong of the federal money laundering statute. Defendant, here, was charged with violating N.J.S.A. 2C:21-25b(1), the promotion prong of New Jersey's money laundering statute. The language of N.J.S.A. 21-25b(1), which is clear on its face, involves only the promotion of criminal activity, not the concealment of property. N.J.S.A. 21-25b(2) involves the concealment prong, but defendant was not charged with violating that subsection. Defendant's argument that she was prosecuted for and found guilty of a crime with which she was not charged is clearly without merit.
The New Jersey statute does not require that a particular underlying crime be set in motion. Any "criminal activity" will suffice. See State v. One 1994 Ford Thunderbird, 349 N.J.Super. 352, 373, 793 A.2d 792 (App.Div.2002). Defendant claims that there was no independent predicate offense in this case from which criminally derived proceeds were obtained. An independent predicate offense is not necessary to the prosecution of the promotion prong of New Jersey's money laundering statute. Proceeds of a criminal activity may be derived from an already completed offense or a completed phase of an ongoing offense. United States v. Conley, 37 F.3d 970, 980 (3d Cir.1994).
*174 Defendant's allegiance to George Scott's directives in disbursing funds, contrary to her legal obligations as a closing attorney, facilitated George Scott's illegal real estate transactions. Without defendant's assistance, George Scott would not have been able to deceive buyers and mortgage companies by creating the false impression that he, Ace, or Shamond Scott owned the property when, in fact, such was not the case.
Numerous federal cases have interpreted 18 U.S.C. 1956(a)(1)(A)(i), the federal money laundering model to N.J.S.A. 2C: 21-25b(1), as not requiring the government to prove that transactions charged were both intended to promote a continuing enterprise and also to conceal the source of funds used in the transaction. The statute requires proof of either. The court in United States v. Jackson, 935 F.2d 832, 842 (7th Cir.1991), held that 18 U.S.C. 1956(a)(1)(A)(i) and (a)(1)(B)(i) "are aimed at different activities, the first at the practice of plowing back proceeds of `specified unlawful activity' to promote that activity, the second at hiding the proceeds of the activity. The different aims suggest that the prosecution in a money laundering case will generally make its case under one provision or the other...." Similarly, the court in United States v. Haun, 90 F.3d 1096, 1100 (6th Cir.1996), cert. denied, 519 U.S. 1059, 117 S.Ct. 691, 136 L.Ed.2d 614 (1997), held:
While a conviction under § 1956(a)(1)(B) may require proof of concealment or disguise, that evidence is not necessary for a conviction under § 1956(a)(1)(A). [Under] § 1956(a)(1)(A)(i), the government must prove that the defendant: (1) conducted a financial transaction that involved the proceeds of unlawful activity; (2) knew the property involved was proceeds of unlawful activity; and (3) intended to promote that unlawful activity.
[(citation omitted).]
In United States v. Garcia-Torres, 341 F.3d 61, 65 (1st Cir.2003), cert. denied, ___ U.S. ___, 124 S.Ct. 1467, 158 L. Ed.2d 121 (2004), the court stated, "Subsection (A)(i) can be described as the `promotion' element of the statute, and subsection (B)(i) can be described as the `concealment' element of the statute. As the statute unambiguously indicates, a conviction may be predicated on either the promotion prong or the concealment prong." (emphasis in the original).
In United States v. Marbella, 73 F.3d 1508, 1514 (9th Cir.), cert. denied, 518 U.S. 1020, 116 S.Ct. 2555, 135 L.Ed.2d 1073 (1996), the court wrote,
To support a conviction for money laundering under 18 U.S.C. § 1956(a)(1), the government must prove [defendant] (1) engaged in a financial transaction which involved proceeds from specified illegal activity, (2) knew the proceeds were from illegal activity, and (3) intended the transaction either to promote the illegal activity or to conceal the nature, source or ownership of the illegal proceeds.
In that case, the defendant was convicted of money laundering involving a scheme for collecting on inflated medical claims and paying referral fees to "cappers." Ibid. The defendant paid law enforcement agents posing as "cappers" referral fees for fraudulent claims through an account of another comprised of funds illegally derived from the settlement of fraudulent claims. Ibid. The defendant was aware that fees would be paid and that the scheme promoted underlying mail fraud activity. Ibid.
Federal case law, therefore, supports application of N.J.S.A. 2C:21-25 to defendant's conduct. A conviction pursuant to 18 U.S.C. § 1956(a) does not require *175 proof that defendant committed the specific predicate offense. It merely requires proof that the monetary transaction constituted the proceeds of a predicate offense. United States v. Richard, 234 F.3d 763, 768 (1st Cir.2000). Defendant must know that the transaction involved criminally derived property. She need not have known that the subject property was derived from specific unlawful activity. In United States v. Paramo, 998 F.2d 1212, 1215-16 (3d Cir.1993), cert. denied, 510 U.S. 1121, 114 S.Ct. 1076, 127 L.Ed.2d 393 (1994), defendant had the intent to promote a specified unlawful activity, mail fraud, by cashing embezzled IRS checks. Although none of the proceeds from the earlier mail frauds were actually used to facilitate the subsequent frauds, the circuit court approved the district court's jury charge that the mail fraud can be past, future or ongoing. Any or all will suffice as the unlawful activity promoted.
The illegal real estate transactions executed by Scott and defendant are contained within the scope of the promotion prong New Jersey's money laundering statute. The statute is clear on its face. Defendant was properly charged. Her conviction will not be disturbed.

II
Defendant argues for the first time on appeal that the jury instructions on money laundering were erroneous because they "did not advise the jury that any so-called money laundering must be a crime separate and distinct from the underlying offense that generated the money to be laundered." This court's interpretation of the money laundering statute makes defendant's premise incorrect. There was no error in the jury charge on money laundering. Judge Heimlich gave the following charge:
A person is guilty of a crime [of money laundering] if the person engages in a transaction which involves property known to be derived from criminal activity, with the intent to facilitate or promote the criminal activity.
In order to establish the guilt of the defendant the State must prove all of the following elements beyond a reasonable doubt. The defendant knowingly engaged in a transaction involving property alleged in the indictment. And they're talking about 11 East Greenbrook or 10 Lakeside in North Caldwell.
Two, that the defendant knew the property, that's those two properties or either one, was derived from criminal activity. Three, the defendants intent was to facilitate or promote the criminal activity.
There is no model jury charge for N.J.S.A. 2C:21-25. The judges proposed charge was based on a "tentative model charge" provided by the Administrative Office of the Courts (AOC). It essentially followed the language of the statute. The judge gave the defense and the prosecution a copy of his intended charge for the attorneys to view overnight and to allow them to submit any proposed changes on the following day. On the following day, defense counsel did not suggest any alterations pertinent to this appeal. At trial the jury did not request a readback or clarification of the law.
Except as otherwise provided by R. 1:7-5 [trial errors] and R. 2:10-2 (plain error), no party may urge as error to any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its verdict, but opportunity shall be given to make the objection in open court, in the absence of the jury.
[R. 1:7-2.]
*176 In this case, defense counsel had an opportunity to object. She did not submit a request to charge or object to the charge as given. Where there is no objection, a challenge to the jury charge is reviewed under the plain error standard pursuant to R. 2:10-2.
The plain error standard is not met in this case. The jury charge provided a "`comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988) (quoting State v. Green, 86 N.J. 281, 287-88, 430 A.2d 914 (1981)). Judge Heimlich accurately and fairly defined the crime of money laundering as charged by the indictment against defendant.

* * * * * *
[At the direction of the court, per R. 1:36-3, the discussion of the other issue in the appeal has been omitted from the published version of the opinion.]

* * * * * *
Affirmed.
NOTES
[1] Defendant has been disbarred as a result of her conviction of these offenses.