# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1838-16T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

JOSEPH J. TALAFOUS, JR.,

    Defendant-Respondent.

_____

Submitted May 23, 2017 — Decided June 13, 2017

Before Judges Reisner and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-05-0072.

Christopher S. Porrino, Attorney General, attorney for appellant (Joseph A. Glyn, of counsel and on the brief).

Miller, Meyerson & Corbo, attorneys for respondent (Gerald D. Miller, of counsel and on the brief).

PER CURIAM

    By leave granted, the State appeals from an October 13, 2016 order granting defendant's motion to dismiss Count One of Superseding Indictment No. 16-05-0072-S, which charged defendant

with first-degree money laundering, N.J.S.A. 2C:21-25(b)(2)(a), and from a November 14, 2016 order denying reconsideration. We affirm both orders.

In the nineteen-count indictment, the State charged defendant, an attorney, with a litany of offenses arising from his alleged theft of funds from clients.[1] The top count of the indictment charged defendant with allegedly "laundering" the stolen funds, by depositing them or directing that they be deposited into either his attorney trust account or his attorney business account "knowing that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the said client monies" in an amount "in excess of $1,500,000."

Before discussing the Grand Jury evidence, it is helpful to consider the money laundering statute, and the case law construing it. The section with which defendant was charged prohibits a person from "engag[ing] in a transaction involving property known

---

[1] The indictment also included multiple counts of second-degree theft by unlawful taking, N.J.S.A. 2C:20-3; second-degree theft by failure to make required disposition of property, N.J.S.A. 2C:20-9; second-degree misapplication of entrusted property, 2C:21-15; second-degree theft by deception, N.J.S.A. 2C:20-4; and third-degree filing a false or fraudulent gross income tax return, N.J.S.A. 54:52-10. Prior to the indictment, defendant had been disbarred by consent after admitting that he knowingly misappropriated client funds. In re Talafous, 222 N.J. 127 (2015).

. . . to be derived from criminal activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, location, source, ownership or control of the property derived from criminal activity[.]" N.J.S.A. 2C:21-25(b)(2)(a).

As expressed in N.J.S.A. 2C:21-23, the money laundering statute was designed to "stop the conversion of ill-gotten criminal profits, . . . and punish those who are converting the illegal profits, those who are providing a method of hiding the true source of the funds, and those who facilitate such activities." The Legislature emphasized the "need to deter individuals and business entities from assisting in the 'legitimizing' of proceeds of illegal activity." N.J.S.A. 2C:21-23(e).

The money laundering statute is intended to be construed broadly to serve its purposes. State v. Diorio, 216 N.J. 598, 625 (2016). However, it requires proof of something more than an underlying crime. Id. at 622. "[T]the statute requires two 'transactions,' (1) the underlying criminal activity generating the property, and (2) the money-laundering transaction where that property is either (a) used to facilitate or promote criminal activity, or (b) concealed, or 'washed.'" State v. Harris, 373 N.J. Super. 253, 266 (App. Div. 2004), certif. denied, 183 N.J. 257 (2005). The Supreme Court recently reaffirmed that analysis

in <u>Diorio</u>, <u>supra</u>, 216 <u>N.J.</u> at 622 (quoting <u>Harris</u>, <u>supra</u>, 373 <u>N.J.</u> <u>Super.</u> at 266).

The federal courts have interpreted the federal money laundering statute similarly. <u>See</u> 18 <u>U.S.C.A.</u> § 1956(a)(1). The statute does not prohibit "non-money laundering acts such as a defendant's depositing the proceeds of unlawful activity in a bank account in his own name and using the money for personal purposes." <u>United States v. Conley</u>, 37 <u>F.</u>3d 970, 979 (3d Cir. 1994).

> Money laundering must be a crime distinct from the crime by which the money is obtained. The money laundering statute is not simply the addition of a further penalty to a criminal deed; it is a prohibition of processing the fruits of a crime or of a completed phase of an ongoing offense.
>
> [<u>United States v. Abuhouran</u>, 162 <u>F.</u>3d 230, 233 (3d Cir. 1998) (citing <u>Conley</u>, <u>supra</u>, 37 <u>F.</u>3d at 980).]

In this case, the motion judge reasoned that placing the money in defendant's attorney trust account (ATA) was not a crime, because ATA money is by definition not the attorney's money and is held for the client's benefit. She further reasoned that defendant's crime was taking the money out of the account and using it for himself, and the State had not presented evidence of a subsequent crime. Hence, she found that the State failed to present evidence establishing each element of the money laundering charge. <u>See</u> <u>State v. Morrison</u>, 188 <u>N.J.</u> 2, 12 (2006) ("A trial

4

court . . . should not disturb an indictment if there is some evidence establishing each element of the crime to make out a prima facie case."). The judge stated:

> [A]s to the money laundering Count . . . I don't see that . . . [some] evidence is there . . . analyzing it under Harris, because an attorney trust account is where that money should have been. It should have . . . remained there until it went for the benefit of the beneficiary. But the simple act of taking it and misappropriating it, or stealing it, . . . [is] a crime for which he is charged . . . and he will have to answer to those charges. But I just don't see . . . [some] evidence for the money laundering.

Unless the trial court acts under a "misconception of the law," the "decision to dismiss an indictment is left to the sound discretion of the trial court, and will only be overturned upon a showing of a mistaken exercise of that discretion." State v. Lyons, 417 N.J. Super. 251, 258 (App. Div. 2010) (citation omitted). We conclude that the motion judge reached the correct result and therefore we find no abuse of discretion here.

We do not necessarily agree with the judge that, in all of the cases presented to the Grand Jury, placing the money in defendant's ATA was appropriate. In some of the cases, that transfer in itself constituted theft or misappropriation, because defendant had no lawful reason to transfer the money from the client's accounts to any of his accounts and there was some

evidence of his unlawful purpose in making the transfer. In other cases, where defendant initially properly placed funds in his ATA, we agree with the judge that his subsequent theft of the money from his ATA was not money laundering. Most importantly, while the State presented some evidence that defendant stole or misappropriated his clients' money in all of the cases, the State failed to present evidence that he laundered the funds in any of the cases. A brief review of the State's Grand Jury evidence will illustrate our conclusion.

In the first case, the State presented evidence that defendant held a power of attorney (POA) for Peter Pasinosky, an incapacitated person, and used the POA to wrongfully transfer money from Pasinosky's bank accounts into defendant's ATA or attorney business account (ABA). After Pasinosky's death, defendant used his position as co-executor of Pasinosky's estate to misappropriate estate funds, which he placed in his ATA or ABA. The State did not produce evidence that defendant moved money from his ATA into his ABA, but only that he took Pasinosky's funds and put it into one or the other of those accounts and then used the money for his own purposes. As in all of the cases, the State produced no evidence of what those purposes were or what became of the money after it left defendant's ATA or ABA.

6

In answer to a question from one of the Grand Jurors, the prosecutor told the Grand Jury that "it's not so relevant . . . that it's the attorney trust account or the attorney business account. These were accounts maintained by [defendant] and he had full control of these accounts." She explained that, for purposes of the theft charges, what was important was "that money is removed from [the victim's accounts] and moved to accounts that [defendant] had control over." The State presented no evidence that the theft was concealed (as opposed to committed) through placement of the money in defendant's accounts.

The next matter involved the Jared Sharengo Trust, which contained the proceeds of a settlement for a minor, resulting from a lawsuit over his father's death. Defendant controlled the trust funds and misappropriated some of the money. However, the State produced no evidence that any money was moved from defendant's ATA into his ABA, or that he used either account to "launder" any funds. Rather, the State simply produced testimony that defendant took about $400,000 of the Sherango Trust money and, in the detective-witness's conclusory terms, used it "for his own purposes." As presented to the Grand Jury, there was no evidence that defendant committed any crime beyond the initial theft or misapplication of the entrusted funds, which under the facts presented, was completed when he transferred the money to his own

7

accounts without any legal justification and with an unlawful purpose.

Similarly, the State presented evidence to the Grand Jury that defendant stole about $316,000 from the Estate of Mildred Colavito, while he was the estate executor. Again, the State presented evidence that defendant transferred money from the Estate into either his ABA or his ATA. There was no evidence of any second transaction, between the two accounts or from either account to a third account belonging to defendant. There was no evidence as to how placing the money in either the ABA or ATA facilitated or concealed the theft of the money from the Estate, or that defendant committed any further crime which the prior deposits helped to conceal or facilitate. To the contrary, according to the proofs the State presented, transferring the money into those accounts, without legal justification, constituted the misapplication or theft of the funds.[2]

The State next presented evidence that defendant stole funds from the Estate of Michael Zaccaria while serving as the estate's attorney. Defendant was hired by the decedent's family to collect

---

[2] The State also presented evidence that defendant committed tax fraud by telling his accountant that some of the deposited funds were "loans" from the Estate. However, there was no evidence that putting the money in the ATA or ABA made that story more plausible or otherwise facilitated or concealed the tax fraud.

the proceeds of several life insurance policies. Defendant did so and deposited some of the proceeds in his ATA. He disbursed some of the money to the beneficiaries. However, he moved about $183,000 of those funds into his ABA, noting on some of the checks that they represented partial payment for his fees or reimbursement of expenses. However, he never billed the estate or the beneficiaries for those amounts. He also used about $222,000 of the insurance proceeds, which he had deposited in his ATA, for his personal use.

The State produced no testimony or other evidence that it was wrongful or illegal for defendant to have initially placed the collected funds in the ATA. As presented to the Grand Jury, the crimes he committed consisted of wrongfully taking the money out of the ATA, either to pay for phantom "fees" which were deducted and placed in the ABA, or directly taken from the ATA and spent for defendant's benefit in unspecified ways.

The State also presented evidence that, while acting as the attorney for the Estate of Maria Matarazzo, defendant stole money from her estate. According to the State's evidence to the Grand Jury, defendant stole the money by convincing the estate executor that he needed about $335,000 to pay either his own legal fees or to pay other fees that he would expend on behalf of the estate. The Grand Jury testimony was somewhat vague, but construing it

most favorably to the State, it would support inferences that the estate was involved in litigation over property in New York and defendant falsely represented to the estate executor that the "fees" were needed to pay counsel in that litigation. Instead of using the money for the New York litigation, defendant used the money for his own purposes. Again, there was no evidence that putting the money in his ABA facilitated or concealed defendant's theft of the money.

On this appeal, the State acknowledges that N.J.S.A. 2C:21-25(b) requires proof of two transactions, the initial crime, followed by the "laundering." See Harris, supra, 373 N.J. Super. at 266. The State argues that defendant engaged in two transactions, because when he stole the money from his clients' estate or trust accounts, he placed the funds in his attorney trust or business accounts "to give the stolen money an air of legitimacy." However, the State produced no evidence before the Grand Jury to establish that putting money in either account served to "conceal or disguise the nature, location, source, ownership or control of the property derived from criminal activity." N.J.S.A. 2C:21-25(b)(2)(a). In fact, in most of the cases, the State's evidence, as presented and explained to the Grand Jurors, was that defendant stole the money when he placed it in his own

accounts rather than leaving it in the clients' trust or estate accounts.

Notably, the Grand Jurors twice asked for clarification as to how defendant's conduct constituted money laundering. At one point, a juror asked: "Can you explain the rationale for the money laundering? What's the rationale for the first indictment [count one]? It's not very clear." The prosecutor did not answer the questions, other than by referring to the statute in general terms and telling the jurors to read the indictment.

Because the State did not present some evidence to support each of the elements of the money laundering charge, the trial court did not abuse its discretion in dismissing Count One of the superseding indictment. See Morrison, supra, 188 N.J. at 12.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION