**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5545-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMIE L. LAWSON a/k/a
JAMES LAWSON,

     Defendant-Appellant.

_____

Argued September 17, 2019 – Decided September 27, 2019

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Accusation No. 17-10-1567.

Michael James Confusione argued the cause for appellant (Hegge & Confusione, attorneys; Michael James Confusione, of counsel and on the brief).

Regina M. Oberholzer, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Regina M. Oberholzer, of counsel and on the brief).

PER CURIAM

Defendant pleaded guilty to first-degree money laundering, N.J.S.A. 2C:21-25(c), and third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a), and was sentenced on the former to a ten-year prison term, subject to a forty-two-month parole ineligibility period; only fines were imposed on the latter. In this appeal, defendant argues: (1) the factual basis he gave at his plea hearing does not support the money laundering conviction; (2) the sentence imposed was based on an erroneous application of aggravating and mitigating factors or was otherwise excessive; and (3) the restitution order, which obligated defendant's repayment of $1,860,981, is infirm because an evidentiary hearing was not conducted. We reject these arguments.

The Criminal Code defines money laundering as occurring in any one of the three instances delineated in subsections (a), (b), and (c) of N.J.S.A. 2C:21-25. Defendant pleaded guilty to violating subsection (c), which required proof that he "direct[ed], organize[d], finance[d], plan[ned], manage[d], supervise[d], or control[led] the transportation of or transactions in property known or which a reasonable person would believe to be derived from criminal activity." This subsection first requires proof of the accused's involvement in a transfer or transportation of property, i.e.: did the accused "direct[], organize[], finance[], plan[], manage[], supervise[], or control" the property's movement? N.J.S.A.

2C:21-25(c). Second, the proofs must demonstrate the accused either "kn[e]w[]" (the subjective aspect) or "a reasonable person would believe" (the objective aspect) that the property "was derived from criminal activity." Ibid.

Subsection (c), upon which we focus, was likely "designed to target the leaders" of such enterprises. James B. Johnston, An Examination of New Jersey's Money Laundering Statutes, 30 Seton Hall. Legis. J. 1, 25 (2005). But its wording is broad enough to envelop those who are either "at the highest tier of a crime ring or the lowest tier." Ibid.[1] Because the factual basis given at the plea hearing suggests defendant was the alpha and omega of his money laundering enterprise, the State's assertion of subsection (c) may seem discordant. But we are satisfied, as Professor Johnston explained in his article, that subsection (c) applies here. Indeed, even if we were to view this subsection as geared toward targeting only the highest tier of a money-laundering scheme,

---

[1] The money laundering statute has received little attention in the reported opinions of the Supreme Court or this court and, even then, only in cases where subsection (b) has been charged. In considering what is required to prove a subsection (b) offense, it has been recognized that the State needs to prove two transactions: one concerns "the underlying criminal activity generating the property," and the other consists of a "money-laundering transaction where that property is either (a) used to facilitate or promote criminal activity, or (b) concealed or 'washed.'" State v. Diorio, 216 N.J. 598, 622 (2014) (quoting State v. Harris, 373 N.J. Super. 253, 266 (App. Div. 2004)).

there is no doubt from what defendant admitted at the plea hearing that he held that position.

In any event, defendant's argument doesn't focus on his place in the alleged machinations but in an aspect of the offense that can be found in all three subsections. That is, defendant argues the factual basis he provided failed to establish that the money he obtained from his victims was derived from criminal activity. We reject his argument. As we have already observed, this element can be shown both subjectively and objectively; it may be established either by what defendant knew or what a reasonable person would believe. So, even if defendant never swore at the plea hearing that he knew he obtained or transferred the property with knowledge that he was engaged in a crime, there is no doubt that a reasonable person would believe that the property transfer resulted from criminal activity.

At the plea colloquy, defendant's admissions focused on his actions in the wake of Superstorm Sandy, which ravaged communities along our shoreline in late October 2012. Defendant admitted that, after the storm, he obtained a construction license through fraudulent means:

> Q. [A]t some point [after November 1, 2012] you had applied for a home improvement contractor's license, is that correct?

A. Yes.

Q. And to fill out that application you've got to answer certain questions, is that correct?

A. Yes.

Q. And one of those questions required you to disclose whether you had a prior conviction, is that correct?

A. Yes.

Q. And you would agree that you failed to disclose that prior conviction?

A. Yes.

Q. Okay, and, as a result, you were able to obtain a contracting license fraudulently, is that correct?

A. Yes.

With that fraudulent license, defendant then secured approximately thirty-five construction jobs:

Q. You were then able to use that contracting license to obtain several contracts throughout the community in Ocean [and] Monmouth Count[ies] to conduct certain builds, is that correct?

A. Yes.

A-5545-17T2

Q. And you had supplied those contracts to RREM[2] in order for the homeowners to obtain money, is that correct?

A. Yes.

Q. Those homeowners then in turn gave you substantial amounts of money in an effort to complete the project, is that correct?

A. Yes.

Q. And that money went into your bank accounts?

A. Yes.

Having acknowledged receipt of substantial sums through use of his fraudulent license, defendant then admitted he performed only some work on some jobs and no work on others:

Q. And you would agree that although some work may have been performed on [some contracts], the total sum of money [] which you received was not [used to] perform[] [some other] contracts, is that correct?

A. Yes.

With these admissions, defendant presented a factual basis for the theft offense to which he also pleaded guilty. This was sufficient to support the money-laundering element defendant now contests. In so many words, he admitted he

---

[2] This acronym stands for the State's Reconstruction, Rehabilitation, Elevation and Mitigation Program.

knew he obtained the funds through criminal activity. And, even if defendant didn't actually say those words, the sworn statements he did provide were more than sufficient for a reasonable person to form the belief that the money came from defendant's criminal activity.

Defendant then provided evidence of his "manage[ment] . . . or control[l]" of his "transportation of or transactions in [this] property," N.J.S.A. 2C:21-25(c), by admitting the funds he obtained from his victims "went into [his] personal accounts" and, from there, were spent "on personal items whether it was trips, dinners, other projects [he] may have been funding in other states" but not "for those specific projects [for] which [he was] paid the money."

Defendant also admitted the money transferred to him by his victims, and then from him to others for the unauthorized payment of personal expenses, exceeded $500,000, turning his money laundering activities into a first-degree offense. N.J.S.A. 2C:21-27(a).

We are satisfied that the factual basis provided by defendant adequately supported his guilty plea to first-degree money laundering.

We also find insufficient merit in defendant's remaining arguments to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add only the following brief comments on the third argument.

A-5545-17T2

As for the third issue, it is true no hearing was conducted to fix the amount of restitution, but the record reveals that defendant consented to a civil judgment that obligated him to repay his victims. Because this court held in another matter that a civil judgment cannot be incorporated in a disposition of a criminal proceeding, State v. Masce, 452 N.J. Super. 347, 355 (App. Div. 2017), certif. denied, 233 N.J. 358 (2018), the monetary obligation – to which defendant had already consented – was simply transformed into a restitution order, which criminal courts may enter. N.J.S.A. 2C:44-2(f). Defendant's argument that an evidentiary hearing was required to affix the restitution amount in these circumstances is without merit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION