NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2145-19T1

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

IAN W. MARIAS,

     Defendant-Respondent.

APPROVED FOR PUBLICATION

May 19, 2020

APPELLATE DIVISION

Argued telephonically April 20, 2020 –
Decided May 19, 2020

Before Judges Sabatino, Geiger and Natali.

On appeal from an interlocutory order of the Superior
Court of New Jersey, Law Division, Essex County,
Indictment No. 18-12-3840.

Frank J. Ducoat, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause
for appellant (Theodore N. Stephens II, Acting Essex
County Prosecutor, attorney; Frank J. Ducoat, of
counsel and on the brief).

Roy B. Greenman, argued the cause for respondent
(Budin Greenman & Greenman, attorneys; Roy B.
Greenman, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

We granted the State leave to appeal in this pending criminal case to address the grading aspects of the money laundering statute, N.J.S.A. 2C:21-23 to -29. The core and unresolved legal question is the meaning of the term "amount involved" in N.J.S.A. 2C:21-27, which calibrates the severity of the offense.

Specifically, N.J.S.A. 2C:21-27(a) prescribes that a defendant commits a first-degree money laundering offense if the "amount involved" is $500,000 or more. The crime is a second-degree offense if the "amount involved" is under $500,000 but equal to or more than $75,000. Lastly, it is a third-degree offense if the "amount involved" is under $75,000.

As this opinion explains, we hold that where, as here, a defendant is charged with engaging in a money laundering transaction prohibited by N.J.S.A. 2C:21-25(b), the "amount involved" is the fair market value of the property transferred in that transaction and any other transactions conducted as part of that common scheme. That fair market value is to be determined by the trier of fact. The value is not necessarily equal to or limited by the sum that the money launderer received in the illicit transaction(s).

A-2145-19T1

Here, the motion judge correctly recognized the "amount involved" in the alleged money laundering transaction was not equal to or capped by the price of approximately $63,000 that defendant received in exchange for the stolen goods he conveyed to a buyer. However, subject to the ultimate trial proofs, we vacate the judge's preemptive determination that the "amount involved" could not reasonably be found by a jury to exceed $500,000. Consequently, we modify the judge's ruling and reinstate defendant's exposure to a possible money laundering conviction of first-degree severity.

I.

We summarize the pertinent allegations against defendant, with a caveat that the State has yet to present its proofs at a trial.

The State alleges that defendant Ian W. Marias stole merchandise from the warehouse of his next-door neighbor and employer, who is in the business of selling doors and door supplies, with the assistance of an accomplice named Adam Edwards (who later cooperated with the State pursuant to a plea bargain). The stolen goods had been obtained by the employer at a cost of about $878,000 but were estimated to have a retail value of about $4 million.

3

According to the indictment, Marias sold a portion of the stolen merchandise for about $63,000 to a buyer in New Hampshire. The buyer paid that money to a fictitious company created by Marias. The rest of the merchandise defendant kept at his grandmother's house.

Among other offenses, the indictment charged Marias with engaging in a money laundering transaction prohibited under N.J.S.A. 2C:21-25(b)(2)(a). That provision, in pertinent part, makes a person guilty of a crime if he or she:

> (b) engages in a transaction involving property known or which a reasonable person would believe to be derived from criminal activity
>
> . . . .
>
> (2) knowing that the transaction is designed in whole or in part:
>
> (a) to conceal or disguise the nature, location, source, ownership or control of the property derived from criminal activity;

A conviction for money laundering carries with it a host of significant penal consequences. For example, a first-degree money laundering conviction requires the defendant to serve a presumptive term of fifteen years' imprisonment, including a period of one-third to one-half of the term that is not

A-2145-19T1

eligible for parole. N.J.S.A. 2C:21-27(a); N.J.S.A. 2C:44-1. The sentences for the underlying crime and for the money laundering must be served consecutively. N.J.S.A. 2C:21-27(c). A conviction of first-degree money laundering includes a fine of $500,000, N.J.S.A. 2C:21-27.2(a), whereas the lesser grades of the offense have lower prescribed fines.[1]

The indictment charged Marias with a first-degree money laundering offense, under a theory that the "amount involved" exceeded $500,000. Marias moved to amend the indictment to charge only a third-degree offense, arguing that the $63,000 he received for the merchandise he was able to sell constituted the "amount involved." The State opposed the motion, arguing that the amount involved should include the unsold merchandise that was stolen, which it says was clearly worth more than $500,000.

The motion judge, sua sponte, conceived of and applied a mathematical formula to calculate the "amount involved" for grading purposes. The judge found that, if the State's proofs at trial were believed, the amount defendant had

---

[1] Under all three grades of the offense, the sentencing judge is authorized to impose various other monetary sanctions and remedies, which are not at issue at this time in this interlocutory appeal. See N.J.S.A. 2C:21-27(b); N.J.S.A. 2C:21-27.1 to -27.6; N.J.S.A. 2C:21-28.

A-2145-19T1

laundered was $283,500.  The judge accordingly modified count three of the indictment from a first-degree to a second-degree money laundering offense.

The judge arrived at this figure by dividing the claimed retail value of the goods that defendant stole from the warehouse (approximately $4 million) by what the owner had paid for those goods ($878,000).  By this calculation, the judge determined that the retail cost was 4.5 times what he regarded as the "wholesale" cost.  The judge then multiplied the amount defendant realized on the sale of the goods (approximately $63,000) by 4.5 to arrive at a fair market value of $283,500. That calculated sum would place the "amount involved" within the second-degree range, above the third-degree cutoff of $75,000 but below the $500,000 first-degree threshold.

On appeal, the State contends the trial court's method calculated the maximum amount involved too low, while defendant argues the court set the maximum too high.

II.

A.

6

In State v. Harris, 373 N.J. Super. 253, 263 (App. Div. 2004), we explained that our money laundering statute in N.J.S.A. 2C:21-25 essentially criminalizes three distinct types of activities.

First, N.J.S.A. 2C:21-25(a) criminalizes the possession or transportation of property that a reasonable person would believe to be derived from criminal activity. Defendant in this case was not indicted under this provision.

Next, N.J.S.A. 2C:21-25(b) criminalizes two types of transactions involving property known to be derived from criminal activity. N.J.S.A. 2C:21-25(b)(1) prohibits transactions intended to facilitate or promote the criminal activity. N.J.S.A. 2C:21-25(b)(2), meanwhile, bars transactions that attempt to conceal or disguise the nature, location, source, ownership, or control of the property derived from criminal activity.

"Promoting" the money laundering activity under subsection (b)(1) occurs when the funds derived from the criminal activity are plowed back into the criminal enterprise. By comparison, "concealing" occurs when the transaction involves hiding the proceeds acquired in the criminal enterprise. Harris, 373 N.J. Super. at 264-65. Thus, to convict a defendant under N.J.S.A. 2C:21-25(b), there must be two transactions: the underlying criminal activity and the

transaction where the property is either used for promotion or concealment. Id. at 266.

For grading purposes, our State's money laundering statute uses the term "amount[s] involved" but does not define that term within its text. N.J.S.A. 2C:21-27. The four definitional provisions expressed in the statute at N.J.S.A. 2C:21-24[2] do not include it. The statute does instruct at N.J.S.A. 2C:21-27(a) that "[a]mounts involved in transactions conducted pursuant to one scheme or course of conduct may be aggregated" to determine the degree of the offense (emphasis added). Apart from that aggregation principle, the statute is otherwise silent about the term's meaning.

The legislative history does not enlighten us as to what the New Jersey Legislature exactly meant by the term "amount[s] involved." The legislative findings and declarations associated with the Act and codified in N.J.S.A. 2C:21-23 are uninformative in this regard.[3]

---

[2] Defining, respectively, the terms "Attorney General," "derived from," "person", and "property." N.J.S.A. 2C:21-24.
[3] Among other things, the legislative findings declare that:

> In order to safeguard the public interest and stop the conversion of ill-gotten criminal profits, effective

Some guidance of a more generic nature is supplied by N.J.S.A. 2C:1-14. Those general definitional provisions cover all portions of our Criminal Code, unless a different meaning is prescribed by a particular statute. Within those general definitions, subsection (m) of N.J.S.A. 2C:1-14 instructs:

> m. "Amount involved," "benefit," and other terms of value. Where it is necessary in this act to determine value, for purposes of fixing the degree of an offense, that value shall be <u>the fair market value at the time and place of the operative act.</u>
>
> [(Emphasis added).]

We applied this general definitional provision in <u>State v. Cetnar</u>, 341 N.J. Super. 257, 263 (App. Div. 2001), in the context of the embezzlement statute, N.J.S.A. 2C:20-2. We held in <u>Cetnar</u> that N.J.S.A. 2C:1-14(m) requires an assessment of the value of the property involved at the time of the wrongdoing.

---

> criminal and civil sanctions are needed to deter and punish those who are converting the illegal profits, those who are providing a method of hiding the true source of the funds, and those who facilitate such activities. It is in the public interest to make such conduct subject to strict criminal and civil penalties because of a need to deter individuals and business entities from assisting in the "legitimizing" of proceeds of illegal activity.
>
> [N.J.S.A. 2C:21-23(e).]

Hence, the defendant's conduct in Cetnar in returning the funds he had embezzled did not limit the "amount involved" to the interest he could have earned on the funds while he possessed them. Id. at 263-64. Rather, the amount involved consisted of the value of the funds at the time they were stolen. Id. at 263.

The Model Criminal Jury Charge for money laundering includes the same principles. The charge instructs that "property means anything of value . . . [and] includes any benefit or interest without reduction for expenses incurred . . . . Value means the fair market value of the property at the time and place of the alleged operative act . . . . Amounts involved in transactions conducted pursuant to one scheme or course of conduct may be aggregated in determining the amount involved." Model Jury Charges (Criminal), "Financial Facilitation of Criminal Activity (Money Laundering) (N.J.S.A. 2C:21-25(b)(2))" (approved June 2009) (emphasis added). However, the model charge does not instruct how a jury is to calculate the amount(s) involved in such transactions.

The New Jersey statute is largely, but not identically, modeled on the federal money laundering statute set forth in 18 U.S.C. § 1956. Harris, 373 N.J. Super. at 267-69. Our own statute has been described as more powerful than its

10

federal counterpart. See James B. Johnston, An Examination of New Jersey's Money Laundering Statutes, 30 Seton Hall Legis. J. 1, 11–13 (2005). For example, under the federal scheme, a money launderer must be involved in a specific underlying crime, whereas our own statute only requires proof that the illicit funds were "known to be derived from criminal activity." Ibid. Also, our New Jersey statute uses the terms "property" and "amount involved," instead of the term "proceeds of specified unlawful activity" found in the federal statute.[4]

We are cognizant the term "amount involved" happens to be used in the federal Money Laundering Control Act of 1986, 18 U.S.C. §§ 981-982, which addresses forfeiture of property involved in money laundering. Under that federal forfeiture statute, property "involved in" a transaction that violates the money laundering statutes is defined as property with a "substantial connection" to the alleged unlawful activity. See, e.g., United States v. $3,000 in Cash, 906 F. Supp. 1061, 1065 (E.D. Va. 1995); see also George Chamberlin, Annotation, What is Considered Property "Involved In" Money Laundering

---

[4] After the decision in United States v. Santos, 553 U.S. 507 (2008), Congress amended the Act to clarify that "proceeds" includes "gross receipts" and not just profits. See, e.g., United States v. Stoddard, 892 F.3d 1203, 1214 n.2 (D.C. Cir. 2018).

Offense, and thus Subject to Civil or Criminal Forfeiture, for Purposes of Money Laundering Control Act (18 U.S.C.A. § 981(a)(1)(A) and 982(a)(1)), 135 A.L.R. Fed. 367 (1996).  But we have no express indication that the New Jersey Legislature intended to adopt such a definition when enacting our own State's money laundering statute.

Comparatively, the money laundering statutes of several other states we have located do not use the term "amounts involved" for grading the offense, but instead employ other terms.[5]  We have been unable to find other states that use the precise terminology used for grading money laundering in N.J.S.A. 2C:21-27.

B.

Having considered these authorities and conceptual principles, we agree with the State that the trial court erred in amending the indictment from a first-degree to a second-degree money laundering offense.  However, in reaching that determination, we do not adopt the State's argument that the "amount involved"

---

[5] See, e.g., (Illinois) "property of a value not exceeding," 720 Ill. Comp. Stat. Ann. 5/29B-1 (2020); (Indiana) "if the value of the proceeds or funds is at least," Ind. Code Ann. § 35-45-15-5 (West); (California) "value of the transaction or transactions exceeds," Cal. Penal Code § 186.10 (West); and (Texas) "if the value of the funds is," Tex. Penal Code Ann. § 34.02 (West).

12

should include the fair market value of the unsold stolen goods that Marias was keeping in his grandmother's garage.

Notably, Marias was indicted under the "transactional" provision of the money laundering statute, N.J.S.A. 2C:21-25(b), not the "transportation/possession" portion, N.J.S.A. 2C:21-25(a). We do not understand why the indictment was framed in that limited way. Be that as it may, we do not reach here the hypothetical question of what the "amount involved" would be if defendant had been charged with a "subsection (a)" offense under N.J.S.A. 2C:21-25 rather than, or in addition to, the "subsection (b)" transactional offense.

We do not conceive of the "transaction" under subsection (b) to encompass the mere holding or movement of goods with an intent to launder them. If we were to do so, it would impermissibly render the transportation/possession language within subsection (a) redundant and superfluous. See Harris, 373 N.J. Super. at 263 (holding that N.J.S.A. 2C:21-25 "criminalizes three distinct types of conduct"). We must construe the statute in a manner that imbues meaning to all of its terms. See State v. Regis, 208 N.J.

13

439, 449-50 (reiterating the well-established principle that statutes should be construed to give "meaning to all of the statute's language").

We recognize that in State v. Diorio, 216 N.J. 598, 625 (2014), our Supreme Court held that the money laundering statute is a continuing offense for purposes of the statute of limitations when a defendant's successive actions bespeak a common scheme to defraud. But unlike the present indictment's description of Marias's conduct interacting with one buyer, the defendant in Diorio undertook a series of transactions, bank deposits, and withdrawals, and the fabrication of company records, all in an effort to perpetuate and disguise his continuing scheme. Id. at 603-07.

As best as we can tell from the limited record here, the only "transaction" committed by Marias was his sale of a portion of the stolen goods. Had he been charged under subsection (a) with illegally possessing the remainder of the stolen goods in his grandmother's garage, the "amount involved" arguably may have been greater. Again, we need not resolve that question in the abstract here.

Hence, on the money laundering count, Marias is culpable under subsection (b) of N.J.S.A. 2C:21-25 for what he transacted, not for what he otherwise possessed or transported. By comparison, the separate count in the

indictment for theft under N.J.S.A. 2C:20-3 more broadly covers all of the goods, including the goods Marias stole but did not sell.

That said, subject to the ultimate proofs at trial, there are reasonable grounds here for a jury to decide that the fair market value of the goods that Marias was able to sell exceeded the $500,000 first-degree threshold. The present record indicates the owner of the warehouse stated that the total replacement cost of the entire stolen inventory was $1.946 million. Investigators noted that the replacement cost of the items remaining in the garage was approximately $1.4 million. The victim has apparently stated that Marias sold the goods for "pennies on the dollar" because the fair value of the items far exceeded what Marias charged for them.

Thus, although the amount Marias realized on the sale was only roughly $63,000, it is reasonably conceivable that the State will persuade the jury that the replacement cost of the items Marias sold was as much as $546,000 (i.e., $1.946 million minus $1.4 million). Moreover, a jury reasonably could find that the fair market value of the goods sold exceeded their replacement cost.

Also, the motion judge's premise that the $63,000 sale price was the fair-market equivalent of "wholesale" cost might rationally be rejected by the jury.

15

For example, the jury might conclude the $63,000 price was an exceptionally discounted bargain below wholesale cost. There appears to be some indication that the defendant portrayed the goods to the buyer as such by allegedly suggesting he was liquidating his grandfather's business.

Although we appreciate the judge's creativity, the assumptions underlying his formula might not be adopted by the jurors. As N.J.S.A. 2C:21-27 instructs, the "amount involved . . . shall be determined by the trier of fact." The judge was correct, however, in rejecting defense counsel's own claim that the "amount involved" must be equal to or capped at the $63,000 sale price. The jury is entitled to arrive at a higher (or, for that matter, lower) figure, so long as it has reasonable support in the trial evidence.

For these reasons, we affirm the trial court in its denial of defendant's motion but modify its ruling to reinstate the first-degree charge.

Modified and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2145-19T1