**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1512
_____

RICHARD H. KRESS,
                                        Appellant

v.

STATE OF NEW JERSEY, PAULA DOW, ATTORNEY GENERAL OF THE
STATE OF NEW JERSEY, JOHN DOE NO. 1-10 (Names being gender neutral
and fictitious as the true identity is/are unknown to Plaintiffs), Individually and in
Their Respective Official Capacities, Jointly, Severally and Individually
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 10-cv-00915)
District Judge: Honorable Dickinson R. Debevoise

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 17, 2011
_____

Before: FUENTES and CHAGARES, <u>Circuit Judges</u>, and POGUE, <u>Judge</u>.[1]

(Filed: December 21, 2011)
_____

OPINION
_____

---

[1]  Honorable Donald C. Pogue, Chief Judge, United States Court of International Trade,
sitting by designation.

CHAGARES, Circuit Judge.

Richard H. Kress brought this declaratory judgment action against the State of New Jersey, the New Jersey Attorney General Paula Dow, and John Doe No. 1-10 (collectively, "New Jersey") seeking to enjoin enforcement of the New Jersey money laundering statute, N.J. STAT. ANN. §§ 2C:21-25(a) and 2C:21-26 (2005) ("the Statute"). [2] Kress appeals the District Court's grant of summary judgment in New Jersey's favor and the denial of his cross-motion for summary judgment. We conclude that the District Court's well-reasoned opinion reaches the correct result. We will, therefore, affirm.

I.

Because we write solely for the parties, we recite only those facts necessary for our decision. Kress is an independent businessman who provides currency pickup, storage, and transportation services for a fee based on the amount of currency involved and the distance transported. He keeps no written records, maintains a confidential client list, and does not inquire about the source of the currency or its intended use. He claims that he does not transport currency if he knows that it was derived from or is intended to be used for illegal activity.

Kress suspended his business operations and pursued this action because he fears that he will be arrested and prosecuted if stopped by police while conducting a currency

[2] This action was originally brought by Belarmino Amaya and Carlos Mejia, who were criminally prosecuted for money laundering. In April 2010, they moved to amend the complaint to add a party referred to as "R.H.K." and later revealed to be Kress. In June 2010, Amaya and Mejia voluntarily dismissed their claims because, in their state criminal prosecution, the Superior Court of New Jersey held that the money laundering statute was constitutional and the District Court announced that it could not move forward with the complaint on abstention grounds.

transfer. His concern was sparked by the arrests of his former co-plaintiffs, Belarmino

Amaya and Carlos Mejia, who were arrested for transporting a large amount of

undocumented currency. Amaya and Mejia were prosecuted under the New Jersey

money laundering statute, N.J. STAT. ANN. § 2C:21-25(a), which, in relevant part,

provides: "A person is guilty of a crime if the person . . . transports or possesses property

known or which a reasonable person would believe to be derived from criminal

activity[.]" "Property" is defined in the Statute as "anything of value." N.J. STAT. ANN.

§§ 2C:21-24, 2C:20-1(g). Additionally, N.J. STAT. ANN. § 2C:21-26 provides that:

> For the purposes of [N.J. STAT. ANN. § 2C:21-25(a)], the requisite knowledge may be inferred where the property is transported or possessed in a fashion inconsistent with the ordinary or usual means of transportation or possession of such property and where the property is discovered in the absence of any documentation or other indicia of legitimate origin or right to such property.

Kress brought this case pursuant to 42 U.S.C. § 1983 and the Declaratory

Judgment Act, 28 U.S.C. § 2201, seeking a declaratory judgment that the Statute is

unconstitutional and an injunction to prohibit prosecution under the Statute. He alleges

that the Statute violates the Fourth, Fifth, and Fourteenth Amendments of the United

States Constitution, is unconstitutionally vague and overbroad, imposes an impermissible

mandatory presumption that shifts the burden of proof, and violates the United States

Constitution's Commerce Clause.

On February 10, 2011, the District Court held that Kress had Article III standing to

challenge the Statute but granted summary judgment in New Jersey's favor and denied

Kress's cross-motion for summary judgment. Amaya v. New Jersey, 766 F. Supp. 2d

3

533 (D.N.J. 2011). Specifically, the District Court held that (1) Kress's overbreadth argument failed because that doctrine is recognized only in the context of the First Amendment and Kress did not allege any violation of his First Amendment rights, (2) the Statute was not vague as applied to Kress's conduct because his conduct "falls squarely within the field of behavior that the New Jersey Legislature sought to criminalize," (3) the Statute's use of the "reasonable person would believe" standard does not render the law unconstitutionally vague, (4) section 2C:21-26 creates a permissive inference that does not violate the Due Process Clause of the Fourteenth Amendment, and (5) the Statute does not violate the Commerce Clause. Kress appealed.

## II.

The District Court exercised subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, and we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting summary judgment. Kach v. Hose, 589 F.3d 626, 633 (3d Cir. 2009). In reviewing the District Court's ruling, we are "required to apply the same test the district court should have utilized initially." Id. at 634 (quotation marks omitted). Summary judgment is appropriate when the Court concludes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether such relief is warranted, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

4

## III.

Before addressing the merits of Kress's challenge to the Statute, we must address the question of standing. New Jersey maintains that Kress lacks Article III standing to bring a constitutional challenge to the Statute because he cannot demonstrate a concrete injury to a legally-protected interest. New Jersey argues that Kress's "currency transportation service" is virtually indistinguishable from money laundering, which is not a legally protected interest.

Kress replies that New Jersey should be barred from raising the question of standing on appeal because it did not cross-appeal and was not aggrieved by the District Court's judgment. This Court, however, must address standing if there is any doubt as to plaintiff's standing, even if it means raising the issue sua sponte. McCauley v. Univ. of the V.I., 618 F.3d 232, 238 (3d Cir. 2010). Because standing is a matter of jurisdiction, this Court can address standing despite the fact that New Jersey did not cross-appeal on that issue. Constitution Party of S.D. v. Nelson, 639 F.3d 417, 420 (8th Cir. 2011) ("Although the state did not file a cross-appeal on this issue, this failure is inconsequential because standing is a matter of jurisdiction. We may thus consider it sua sponte, or when raised for the first time on appeal." (citations omitted)).

In order to establish Article III standing, the plaintiff must show three things: first, that he or she suffered an "injury in fact," that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical[.]" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations omitted). Second, that there was "a causal connection between the injury and

5

the conduct complained of," in other words, the injury was "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. (corrections omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." Id.

We agree with the District Court that Kress has standing to challenge the constitutionality of the Statute. Kress has suffered economic injury because he has ceased his business operations due to the prosecution of others under the Statute. Although money laundering is obviously not a legally protected interest, economic injury, such as the inability to run one's business, is. See Sierra Club v. Morton, 405 U.S. 727, 733–34 (1972); Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 140 (3d Cir. 2009).

The District Court also correctly found that Kress's potential injury was "actual or imminent" and not "conjectural or hypothetical." Lujan, 504 U.S. at 560. Where a plaintiff can show that the government's enforcement of the statute places the plaintiff in imminent fear of prosecution, courts do not require the plaintiff to risk prosecution by actually taking that action. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128–29 (2007) ("where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." (emphasis in original)). We agree with the District Court that the arrests and prosecution of Amaya

6

and Mejia demonstrate that Kress faces an actual and imminent fear of prosecution in the continued running of his business. Thus, we conclude that Kress has adequately shown that he faces imminent injury to a legally protected interest and has standing to challenge the constitutionality of the Statute. We turn, therefore, to the merits of his appeal.

IV.

A.

Kress's first argument on appeal is that the Statute violates the Fourth Amendment because the New Jersey State Police can rely on it to detain, without probable cause, a person possessing undocumented currency who refuses to answer questions as to the ownership or source of the currency. He argues that arresting someone after a stop of his vehicle simply because he has undocumented currency and refuses to answer questions is unconstitutional because it amounts to the arrest of a merely suspicious person. Kress also contends that a currency possessor's Fifth Amendment privilege against self-incrimination is violated when officers detain that person for questioning on the basis of currency possession alone.

Although the District Court did not address these arguments in response to Kress's complaint, it makes no difference because both arguments are plainly meritless. Kress's Fifth Amendment argument fails because the constitutionality of police questioning turns on the circumstances of each particular case. For instance, the court must assess whether the defendant was in police custody, whether the questioning amounted to interrogation, and whether the defendant's statements were given voluntarily. See J.D.B. v. North Carolina, 131 S. Ct. 2394, 2410–12 (2011). It is not the kind of issue that can be resolved

7

by a declaratory judgment action challenging a statute that does not obligate a suspected person to make a statement.

Kress's Fourth Amendment argument is also unconvincing. Kress cites a case in which the Court of Appeals for the Ninth Circuit struck down a vagrancy statute as violating the Fourth Amendment because it allowed for the questioning and arrest of merely "suspicious" persons who refused to produce identification. Lawson v. Kolender, 658 F.2d 1362, 1369 (9th Cir. 1981). The Statute is distinguishable from the statute in Lawson, however, because it does not require the suspect to explain his or her possession of undocumented currency. See id. Nor does the presumption created by § 2C:21-26 compel production of documentation because it is merely an inference to be used at trial to prove intent and does not relate to questioning by police officers. Hence, Kress cannot prevail on his facial Fourth Amendment challenge.

B.

Kress's next contention is that the multiple undefined terms in § 2C:21-26 — "inconsistent fashion", "ordinary or usual means", and "indicia" — and the use of the "reasonable person would believe" standard in § 2C:21-25(a) render the Statute unconstitutionally vague.

While we need not pass on the potential merit of an as-applied challenge to the Statute, we agree with the District Court that Kress's facial challenge to the Statute is unavailing. The District Court correctly noted the Supreme Court's declaration that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756 (1974). "A plaintiff who engages in

8

some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982). The District Court held that the conduct Kress describes is so clearly within the contours of the Statute that he cannot challenge the Statute on vagueness grounds. We agree. While there may be ambiguities as to what conduct is prohibited at the outer limits of the Statute's coverage, there is little doubt that Kress's business operations fall within the prohibited conduct. See id. at 502. The transportation of large amounts of currency without any documentation or information about its owner or origin is, as the District Court found, highly unusual and undoubtedly constitutes a "fashion inconsistent with the ordinary or usual means of transportation or possession of such property[.]" N.J. STAT. ANN. § 2C:21-26. Thus, Kress is clearly on notice that his conduct is in grave danger of violating the Statute and, as such, his vagueness challenge is meritless.

Likewise, Kress's overbreadth argument is unpersuasive. Kress maintains that the Statute is overbroad because it encompasses all currency and property handling transactions, regardless of however ordinary and non-criminal they are. He points out that the Statute does not require the presence of drugs, weapons, or stolen property and employs a very broad definition of "property." As explained by the District Court, however, Kress's overbreadth challenge is misplaced because the overbreadth doctrine has been recognized only in First Amendment cases. Lutz v. City of York, Pa., 899 F.2d 255, 270–71 (3d Cir. 1990).

9

C.

Kress's third contention is that § 2C:21-26 violates the Fifth and Fourteenth

Amendments by shifting the burden of proof to the defendant with respect to <u>mens rea</u>.

We agree with the District Court that the inference allowed in § 2C:21-26 is permissive

and does not shift the burden of proof.  In assessing the constitutionality of a jury

instruction that creates an inference or presumption, the Court must first "determine

whether the challenged portion of the instruction creates a mandatory presumption or

merely a permissive inference." <u>Francis v. Franklin</u>, 471 U.S. 307, 314 (1985) (citations

omitted).

> A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts.  A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

<u>Id.</u>

The inference created by § 2C:21-26 is evidently permissive, as it states: "the

requisite knowledge <u>may</u> be inferred where . . ." (emphasis added).  The word "may"

indicates that the jury can choose whether or not to apply the presumption. <u>See</u> <u>Pichler v.</u>

<u>UNITE</u>, 542 F.3d 380, 394 (3d Cir. 2008) (explaining that the word "may" in a statutory

provision indicates its discretionary and permissive nature); <u>Hopewell Valley Citizens'</u>

<u>Grp., Inc. v. Berwind Prop. Grp. Dev. Co.</u>, 10 A.3d 211, 217 (N.J. 2011) ("The word

'may' generally indicates the permissiveness of the behavior described").  In addition, the

New Jersey Model Jury Charge for money laundering instructs: "You <u>may infer</u> that the

defendant had this requisite knowledge if you find the following . . . ."  Model Jury

10

Charge, Financial Facilitation of Criminal Activity (revised June 27, 2011) (emphasis added). The model instruction also emphasizes: "you are never required or compelled to draw an inference." Id.

Having concluded that § 2C:21-26 engenders a permissive inference, we need not proceed any further. The Supreme Court has explicitly proclaimed that a facial challenge to a permissive inference is unavailable: "When reviewing this type of device, the [Supreme] Court has required the party challenging it to demonstrate its invalidity as applied to him." Cnty. Court of Ulster Cnty., N.Y. v. Allen, 442 U.S. 140, 157 (1979). In the absence of any trial record in this case, it would be premature for the Court to rule on the appropriateness of giving a jury instruction on § 2C:21-26. For that reason, we decline to rule on the constitutionality of § 2C:21-26 as applied to Kress's alleged conduct.

## D.

Finally, Kress asserts that the Statute excessively burdens interstate commerce in violation of the Commerce Clause, U.S. Const. Art. 1, § 8, cl. 3. He argues that the Statute effectively requires a person to acquire and exhibit a license or permit if they possess "anything of value" and imposes a heavy burden on interstate commerce. While states have the power to enact laws to protect the health, safety, and welfare of its residents, their laws may not excessively burden interstate commerce. Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on . . . commerce is clearly

excessive in relation to the putative local benefits. . . . [T]he extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

Id.

We agree with the District Court that the Statute does not violate the Commerce Clause. The Statute does not merely prohibit the transport of undocumented property; it prohibits the transport of such property with the knowledge or constructive knowledge that the property was derived from criminal activity. That proscription applies to a minimal amount of conduct in which a person is transporting property in a distinctly unusual and suspicious manner. When it enacted the Statute, the New Jersey legislature declared:

> Despite the impressive efforts and gains of our law enforcement agencies, individuals still profit financially from illegal organized criminal activities and illegal trafficking of drugs, and they continue to pose a serious and pervasive threat to the health, safety and welfare of the citizens of this State while, at the same time, converting their illegally obtained profits into "legitimate" funds with the assistance of other individuals.

N.J. STAT. ANN. § 2C:21-23d. It is apparent that the public interest in preventing money laundering and the criminal activity that laundering facilitates justifies the Statute's minimal burden on interstate commerce. Accordingly, we agree with the District Court that the Statute does not place an impermissible burden on interstate commerce and does not violate the Commerce Clause. We have also considered Kress's remaining arguments and find that they are without merit.

12

V.

For the foregoing reasons, we will affirm the well-reasoned judgment of the District Court.