# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2958-21

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

STEVEN H. SALAMI,

    Defendant-Respondent.

_____

> Argued January 11, 2023 – Decided November 27, 2023
>
> Before Judges Accurso, Firko and Natali.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 21-07-0696.
>
> Melinda A. Harrigan, Assistant Prosecutor, argued the cause for appellant (Raymond S. Santiago, Monmouth County Prosecutor, attorney; Melinda A. Harrigan, of counsel and on the brief).
>
> Steven E. Nelson argued the cause for respondent (Nelson, Fromer, Crocco & Jordan, attorneys; Steven E. Nelson, on the brief).

Greenbaum, Rowe, Smith & Davis LLP, attorneys for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Christopher D. Adams, of counsel and on the brief; Marjan Moussavian, on the brief).

The opinion of the court was delivered by

ACCURSO, P.J.A.D.

A Monmouth County grand jury returned an indictment against disbarred attorney, defendant Steven H. Salami, alleging he'd misappropriated client funds in a series of real estate transactions. The sixty-three-count indictment consisted of fifty-eight counts of third-degree misapplication of entrusted property, N.J.S.A. 2C:21-15, two counts of second-degree misapplication of entrusted property, N.J.S.A. 2C:21-15, one count of second-degree theft by failure to make required disposition of property, N.J.S.A. 2C:20-9, and two counts of first-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(a) and (c), colloquially referred to as money laundering.

The trial court granted defendant's motion to dismiss the two financial facilitation counts. Relying on State v. Harris, 373 N.J. Super. 253 (App. Div. 2004), the trial court held "that evidence of two improper transactions is necessary to indict a defendant for money laundering" in accord "with the clear intent of the legislature to use the money laundering statute to punish

A-2958-21

organized crime rather than every individual, who commits a theft." The judge found the only transaction in this case was defendant's wrongful transfer of client funds from his attorney trust account into his business account. Perceiving "no logical difference between this defendant placing those funds in his operating account and the act of a common thief placing stolen money into his pocket," the court found the evidence, viewed most favorably to the State, did not establish the elements of money laundering under N.J.S.A. 2C:21-25(a) or (c).

We granted the State's motion for leave to appeal and now reverse.[1] As our Supreme Court has noted, New Jersey's money laundering statute has a "broad scope." State v. Diorio, 216 N.J. 598, 625 (2014). How broad we need not determine here, as we are satisfied the State's presentation of evidence to the grand jury that defendant took funds from new real estate clients to complete real estate transactions for existing clients whose funds he'd misappropriated established a prima facie case of financial facilitation under N.J.S.A. 2C:21-25(a) and (c).

---

[1] We granted the motion of the Association of Criminal Defense Lawyers of New Jersey to appear as amicus curiae limited to the submission of a brief.

A-2958-21

The facts leading to defendant's indictment are easily summarized. In September 2019, a client of defendant's complained to the Monmouth County Prosecutor's Office's that she'd retained defendant two months earlier to represent her in the purchase of a townhouse, providing him $30,000 to be held in escrow. The closing never occurred, and defendant failed to return the escrowed funds.

When a detective reached out to the New Jersey Lawyer's Fund for Client Protection, he learned three other clients had made similar complaints about defendant. On interviewing those individuals, the detective learned one claimed she'd retained defendant in April 2019 to represent her in a real estate transaction. The deal never closed, however, because defendant failed to transfer the $47,000 she'd wired to his trust account and never returned her money.

Another client claimed he'd hired defendant in August 2019 to represent him in his home purchase. After he'd wired $178,000 to defendant's trust account, defendant stopped answering his calls. Defendant never transferred the money to the seller, resulting in the client losing both the house and his $178,000. The third client claimed she'd retained defendant to represent her in two real estate transactions in the summer of 2019. She claimed she'd wired

$10,000 to defendant's trust account for a business deal in which she was to purchase two homes in Plainfield. After the closing fell through for reasons unrelated to defendant, he failed to return her money. The same client claimed defendant had represented her in the sale of a condominium, in which the buyer had wired an $18,000 deposit to defendant's trust account. The client claimed defendant failed to show up to represent her at the closing, and although the sale went through, defendant never provided her the $18,000 he was holding in escrow.

The Monmouth County Prosecutor filed a complaint-warrant against defendant alleging multiple counts of misappropriation of entrusted property in violation of N.J.S.A. 2C:21-15 in an aggregate amount of $75,000. After the prosecutor's office issued a press release announcing defendant's arrest, the office received "hundreds of phone calls" from other clients alleging defendant had stolen funds from them too. The prosecutor alleges defendant swindled sixty clients of a total of $1,179,990.59.

Specifically, the investigation conducted by the prosecutor's office revealed defendant used primarily one trust account and one operating account between January 1 and April 1, 2019, and another set of trust and operating accounts from April through the time of his arrest in October 2019. Defendant

A-2958-21

was the sole signatory on all four accounts. Defendant apparently charged between $750 and $950 per real estate transaction, with the fees being deposited into his operating accounts.

From an analysis of defendant's attorney bank records, the prosecutor's office calculated defendant transferred $612,920 from his first trust account to his first operating account between January and October 2019. Defendant transferred $137,370 of that sum back to his trust account for the benefit of his clients. He also appears to have taken $118,280.05 from his operating account for the benefit of clients. Leaving aside the $38.17 remaining in his first operating account at the time of his arrest, which was seized by the Office of Attorney Ethics, the prosecutor calculated defendant transferred $357,231.78 out of his first trust account between January and October for his personal use.

The prosecutor's office also discovered $245,861.96 in transfers from defendant's second trust account to the second operating account between April through October 2019. Investigators found one transfer of $14,911.75 back to that trust account, which was not used for the benefit of any client. Accounting for the $195.59 remaining in the second operating account seized by the Office of Attorney Ethics, the prosecutor's office determined defendant transferred $230,754.62 from his second trust account into his second

6

operating account, which he subsequently spent for his personal benefit. All told, the prosecutor's office alleged defendant improperly transferred $587,986.40 from his trust accounts into his operating accounts, which he then used for his personal benefit.[2]

Asked by an assistant prosecutor before the grand jury about the difference between the $587,986.40 the detective alleged supported the money laundering charges and the more than $1.1 million he earlier testified was stolen by defendant from sixty identified victims, the detective explained "the other funds" went towards payments to other clients "not . . . these sixty victims." In other words, defendant was "taking these funds from his newer clients to complete real estate transactions for previous clients." According to the detective, "those previous clients never came forward as potential victims" because their transactions closed, and they'd not suffered any loss.[3]

---

[2] As noted by the trial court, defendant's counsel averred defendant had a serious substance abuse and gambling problem for several years, and by 2018 "was essentially neglecting and ignoring his law practice despite continuing to accept new real estate clients."

[3] The detective's spreadsheet of victims numbered sixty-one. The detective testified he'd included the name of one client, "as a witness, essentially," who gave a formal statement about his negative experience with defendant, although the client was ultimately made whole and suffered no financial loss.

A-2958-21

Defendant moved to dismiss the two financial facilitation counts of the indictment, arguing the State's instructions to the grand jury were defective, preventing jurors from making an informed decision, that the State failed to establish defendant's alleged financial facilitation constituted a single scheme or course of conduct, and that the evidence presented to the grand jury was insufficient to charge defendant with money laundering. The State countered "that its testifying detective presented evidence to the grand jury that defendant used some of the stolen funds for payments for prior clients rather than personal purchases, and therefore was essentially running a Ponzi scheme with his practice."

The trial court addressed each of defendant's arguments in a thorough and thoughtful thirty-nine-page written opinion. The court rejected defendant's claim that the prosecutor's instructions to the grand jury were flawed for his failure to define "one scheme" or "course of conduct," terms not defined in the Code or the model jury charges. The court found "the prosecutor was only required to ensure the grand jury understood that amounts involved in financial facilitation can be aggregated if they were part of one scheme or course of conduct for grading purposes only," and was satisfied the prosecutor "explain[ed] this concept to the grand jury in plain language."

A-2958-21

The court also rejected defendant's claim that the grand jurors, "viewing the evidence in the light most favorable to the State, . . . could not have reasonably believed that defendant's misappropriation of funds from his clients were part of a single scheme or course of conduct."  Relying on the Supreme Court's holding in Diorio, that "money laundering is a continuing offense for the purposes of the statute of limitations . . . when the record contains evidence of successive acts that facilitate and promote the common scheme to defraud," 216 N.J. at 625, the trial court found the grand jury was "presented with some evidence that defendant's earlier thefts were used to facilitate later misappropriations."

Specifically, the court noted the "testimony before the grand jury that defendant was taking funds from newer clients to complete real estate transactions for previous clients," thereby ensuring those "earlier clients did not raise claims against defendant."  The court found "[d]efendant's clients were placed in a continuous risk of harm, which varied depending on how successful defendant was in obtaining funds from prospective clients.  Any client from whom defendant misappropriated escrow funds did not have their fate determined at the moment of taking," that is, when defendant moved their funds from his trust account to his operating account.  Instead, the court found

9

"the outcomes were dependent on whether defendant could continue to solicit future business." The court found those circumstances presented the grand jury with "sufficient evidence of a continuous offense to aggregate the amount stolen" and provided no basis to dismiss the two financial facilitation counts of the indictment.

Notwithstanding those findings, the court nevertheless dismissed the financial facilitation counts, finding it "apparent from the context of the money laundering statute that the legislation was designed to combat enterprises such as organized crime and drug trafficking operations." Although acknowledging the statute could "be construed to punish certain other conduct," the court found "it was clearly not intended to charge all persons who commit theft with the crime of money laundering." Noting "consistent with the plain language of the statute in the absence of context," that even "a pickpocket who steals money from a pedestrian's pocket and thereby possesses the property known to be derived from criminal activity" could be charged with money laundering, the court found that "not a logical or sensible interpretation of the legislature's intent."

The court found based on "the statute's related provisions and the legislature's explanations for its codification, it is clear that it was not intended

to punish individuals guilty of theft through a single criminal transaction, i.e., taking someone else's money and then spending it."  Although acknowledging our holding in Harris that the money laundering statute "requires two 'transactions,' (1) the underlying criminal activity generating the property, and (2) the money-laundering transaction where that property is either (a) used to facilitate or promote criminal activity, or (b) concealed, or 'washed,'" 373 N.J. Super. at 266, was limited to subsection (b)(1) and (2), N.J.S.A. 2C:21-25(b)(1) and (2), the trial court found "evidence of two separate and distinct improper transactions" is required "in order to establish guilt under sections (a) and (c)" of the statute as well.

Reasoning that defendant acquired the funds initially placed in his trust accounts for the lawful purpose of facilitating his clients' real estate transactions, the trial court found defendant committed only one crime by moving his clients' money from his trust accounts into his operating accounts, and not "two separate and distinct improper transactions" as in Harris.  The court concluded "there is no logical difference between this defendant placing, those funds in his operating account and the act of a common thief placing stolen money into his pocket," and thus "[t]he evidence against defendant, even when viewed in a light most favorable to the State, does not establish that

11

his actions satisfied the requisite elements of money laundering under N.J.S.A. 2C:21-25(a) or (c)."  Determining the allegations of money laundering in the indictment relied on "an unfairly overbroad interpretation of N.J.S.A. 20: 21-25(a) and (c)," the court dismissed those counts on defendant's motion.

The Supreme Court has instructed a trial "court should dismiss an indictment 'only on the clearest and plainest ground, and only when the indictment is manifestly deficient or palpably defective.'"  State v. Twiggs, 233 N.J. 513, 531-32 (2018) (quoting State v. Hogan, 144 N.J. 216, 228-29 (1996)).  The State survives a motion to dismiss an indictment so long as it "presents 'some evidence establishing each element of the crime to make out a prima facie case.'"  State v. Feliciano, 224 N.J. 351, 380 (2016) (quoting State v. Saavedra, 222 N.J. 39, 57 (2015)).

Applying those precepts here, we agree with the State that the trial court erred in dismissing the two financial facilitation counts of the indictment.

N.J.S.A. 2C:21-25 provides in pertinent part that:

> A person is guilty of a crime if the person:
>
> a. transports or possesses property known or which a reasonable person would believe to be derived from criminal activity; or

b. engages in a transaction involving property known or which a reasonable person would believe to be derived from criminal activity

(1) with the intent to facilitate or promote the criminal activity; or

(2) knowing that the transaction is designed in whole or in part:

(a) to conceal or disguise the nature, location, source, ownership or control of the property derived from criminal activity; or

(b) to avoid a transaction reporting requirement under the laws of this State or any other state or of the United States; or

c. directs, organizes, finances, plans, manages, supervises, or controls the transportation of or transactions in property known or which a reasonable person would believe to be derived from criminal activity.

d. For the purposes of this act, property is known to be derived from criminal activity if the person knows that the property involved represents proceeds from some form, though not necessarily which form, of criminal activity. . . .

As we explained in Harris, "[t]he text of N.J.S.A. 2C:21-25 makes clear by use of the designations (a) or (b) or (c) that it criminalizes three distinct types of conduct."  373 N.J. Super. 253, 263-264.  Subsection (a) makes it a crime to "transport[] or possess[] property known . . . to be derived from a

criminal activity."  Subsection (b) makes it a crime to "engage[] in a transaction involving property known . . . to be derived from criminal activity" either "(1) with the intent to facilitate or promote the criminal activity; or (2) knowing that the transaction is designed in whole or in part" (a) to conceal or disguise the source of the property or (b) to avoid any transaction reporting requirement.  Subsection (c) makes it a crime to direct, organize, finance, plan, manage, supervise, or control "the transportation of or transactions in property known or which a reasonable person would believe to be derived from criminal activity."

We find no basis to extend Harris's two-transaction requirement under subsection (b) of the money laundering statute to subsection (a) or (c), neither of which requires, as subsection (b) does, that a defendant "engage[] in a transaction involving property known . . . to be derived from criminal activity."[4]  See State v. Marias, 463 N.J. Super. 526, 536-537 (App. Div. 2020)

---

[4]  In James B. Johnston, An Examination of New Jersey's Money Laundering Statutes, 30 Seton Hall. Legis. J. 1, 25 (2005), the author posits that subsection (c), "the director/organizer prong," was likely "designed to target the leaders of money laundering enterprises," but its wording is broad enough to snare those "at the highest tier of a crime ring or the lowest tier."  Ibid.  Although subsection (c) makes it a crime to direct, organize, finance, plan, manage, supervise, or control "the transportation of or transactions in property known . . . to be derived from criminal activity," it doesn't require a transaction as subsection (b) does.

14

(explaining "the 'transaction' under subsection (b) [does not] encompass the mere holding or movement of goods with an intent to launder them," under subsection (a), because to so hold "would impermissibly render the transportation/possession language within subsection (a) redundant and superfluous").  See also Amaya v. New Jersey, 766 F. Supp. 2d 533, 540 (D.N.J.) (noting to the extent New Jersey's financial facilitation statute "criminalize[s] the knowing transportation of funds that are derived from criminal activity, they go little beyond the federal money laundering statutes and are clearly constitutionally proper") aff'd sub nom. Kress v. New Jersey, 455 Fed. Appx. 266 (3rd. Cir. 2011).  There is simply no anchor in the text for the trial court's extension of the two-transaction requirement of subsection (b) to subsection (a) and (c).  See Marias, 463 N.J. Super. at 537 ("We must construe the statute in a manner that imbues meaning to all of its terms").

In our view, the trial court inexplicably abandoned the rationale it properly employed to reject defendant's arguments that the prosecutor had misadvised the grand jury that amounts involved in financial facilitation can be aggregated if they were part of one scheme or course of conduct and failed to present a prima facie case of aggregation — that is, that defendant's misappropriation of funds from separate clients at different times were part of

15

a single scheme or course of conduct to defraud — in considering whether defendant could be properly charged with money laundering here. Because it is clear to us the prosecutor presented "some evidence" that defendant was managing, controlling and supervising the possession and transport of funds entrusted to him by "newer clients to complete real estate transactions" for previously retained clients, thereby concealing his prior misappropriations and allowing his continuing thefts to go undetected, we are satisfied defendant was properly charged with money laundering under N.J.S.A. 2C:21-25(a) and (c).

We, again, emphasize the scope of New Jersey's financial facilitation statute is broader than the federal money laundering act, 18 USC § 1956, on which subsection (b) was modeled, see James B. Johnston, An Examination of New Jersey's Money Laundering Statutes, 30 Seton Hall Legis. J. 1, 11-13 (2005) (noting that although the provisions of the federal money laundering act are similar to New Jersey's statute, New Jersey's "statute is more powerful"), and broad enough to reach well beyond the targets of the legislation identified by the trial court — "those involved in organized crime and other large-scale criminal undertakings, such as drug trafficking, whose objective was to conceal or legitimize the proceeds of illegal activity," see Assembly Judiciary, Law and Public Safety Committee statement, Senate No. 889 — L.1994 c.121

("This committee substitute would provide the law enforcement community with new tools to combat the knowing financial facilitation of criminal activity, also known as money laundering. This committee substitute is designed to confront this problem by prohibiting money laundering conduct in any form") (emphasis added).

While we need not consider whether the statute is broad enough to envelop the trial court's hypothetical example of "a pickpocket who steals money from a pedestrian's pocket and thereby possesses the property known to be derived from criminal activity," we are confident defendant's conduct in "essentially running a Ponzi scheme with his [law] practice" qualifies as financial facilitation.

Because we are convinced the State presented sufficient evidence before the grand jury to support the charges of financial facilitation in accordance with N.J.S.A. 2C:21-25(a) and (c), we reverse the dismissal of those counts of the indictment and remand for their reinstatement. We do not retain jurisdiction.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17